Merrimack
No. 90-621

THE STATE OF NEW HAMPSHIRE

v.

LEE R. CORSON

July 8, 1991

*John P. Arnold,* attorney general (*David S. Peck,* senior assistant attorney general, on the brief and orally), for the State.

*Randall & Bownes,* of Laconia (*Michael R. Randall* on the brief, and *David H. Bownes* orally), for the defendant.

BATCHELDER, J. This is an interlocutory appeal from the Superior Court (*McHugh,* J.), which presents the following question relative to the jurisdiction of the superior court to hear appeals from convictions in the district court: "Whether a defendant who is fined $500 and assessed a penalty assessment pursuant to RSA 188-F:31 has been 'sentenced by the imposition of a civil penalty . . . to an amount in excess of $500' within the meaning of RSA 599:1." The trial judge rendered an opinion giving an affirmative answer to the question, and denying the State's motion to vacate the defendant's appeal, from which the State prosecuted this appeal. We agree with the trial court, for the reasons which follow, and therefore affirm.

RSA 599:1 (Supp. 1990) provides that,

"A person sentenced by a district or municipal court for a misdemeanor or for any offense which provides the basis for enhanced penalties if the offender is subsequently convicted

of the same offense, or who has been sentenced by the imposition of a civil penalty bringing the total fines and penalties for a violation to an amount in excess of $500, may, at the time the sentence is declared, appeal therefrom to the superior court. The appeal shall be entered by the appellant at the next return day unless for good cause shown the time is extended by the superior court. In all misdemeanor cases which are so appealed or in which defendants are bound over it shall be the duty of the superior court to transmit to the justice of the district or municipal court, within 10 days after the case is finally disposed of, a certificate showing the final disposition of the case."

The defendant in this case was arrested and charged with the violation of reckless operation, contrary to RSA 265:79 (Supp. 1990). The arrest took place on June 4, 1990. RSA 188-F:31, I (Supp. 1990), which was in effect on that date, provides that,

"Every court shall levy a penalty assessment of $2 or 20 percent, whichever is greater, on each fine or penalty imposed by the court for a criminal offense, including any fine or penalty for a violation of RSA title XXI or any municipal ordinance, except for a violation of a municipal ordinance relating to motor vehicles unlawfully left or parked. Such penalty assessment shall be divided into the following components, to be designated as follows: 15 percent for the police standards and training council training fund and 2 percent for the victims' assistance fund. The remaining 3 percent shall be collected . . . for the benefit of the court modernization fund established under RSA 502-A:37."

The defendant was found guilty of the offense on September 21, 1990, and was fined $500, in addition to which the penalty assessment was levied. His license was revoked for sixty days. On September 24, 1990, he appealed his conviction to the superior court, and the State moved to vacate the appeal on the basis that the defendant was not "sentenced by the imposition of a civil penalty bringing the total fines and penalties for a violation to an amount in excess of $500." See RSA 599:1 (Supp. 1990). The court denied the State's motion, and this interlocutory appeal followed.

This is not the first time that we have been afforded the opportunity to consider the meaning and significance of the phrase "penalty assessment." In fact, the language was construed by this court in an *Opinion of the Justices*, 117 N.H. 382, 373 A.2d 640 (1977),

before it became a part of the law of this State. In anticipation of legislative enactment and as part of the legislative process, the court was asked, in a request from the house of representatives, whether a penalty assessment was a tax in the context of the New Hampshire Constitution, and whether such assessment would be violative of part I, article 18 of our State Constitution, either as an excessive fine or as a criminal penalty disproportional to the offense. *Id.* at 383, 373 A.2d at 640–41. The court responded in the negative to both questions and in the process determined that the charges "are not intended for the purpose of punishment, but rather are levied to raise revenue for the training of police officers by imposing a special charge upon those who occasion the need for law enforcement." *Id.* at 384–85, 373 A.2d at 641. The State seeks refuge in this language in asserting that the "penalty" in "penalty assessment" is not a civil penalty.

At this point a word about the nature of Opinions of the Justices may be helpful. In an *Opinion of the Justices*, 84 N.H. 559, 149 A. 321 (1930), this court held that "[t]he true standing to be ascribed to [Opinions of the Justices] seems to be that while they are persuasive they are not controling [sic]; and their persuasive value may be greater or less, as the circumstances under which they are rendered show finality of judgment or the reverse in the minds of the authors." *Id.* at 583, 149 A. at 333. In less than two years from the date of the opinion in Volume 117 of the New Hampshire Reports, three of the justices who authored that opinion were confronted with the "penalty assessment" language in the context of an adversarial proceeding and held that,

> "[a]dding [the penalty assessment] does nothing more than increase all fines covered by the Act. . . . RSA ch. 105-A simply by implication increases all fines imposed under the statutes and all maximum fines (including those in RSA 651:2 IV) by ten percent [which was the assessment at that time] and allocates the increase to the stated purpose."

*State v. Holland*, 119 N.H. 200, 201, 399 A.2d 976, 977 (1979). Thus, it appears that, in the adversarial setting of a litigated case, the court was inclined to the view that the penalty assessment was, as a practical matter, a component of the fine.

The case at hand is a case of statutory interpretation, nothing more, nothing less. If there is a constitutional dimension to any further discussion of penalty assessment levies, it has been anticipated and answered in the language of this court in *State v. Morrill*, 123

N.H. 707, 465 A.2d 882 (1983), where we noted: "The amount presently established as constitutionally entitling civil litigants to a jury trial is $500 [now $1500]. *See* N.H. CONST. pt. I, art. 20. We do not believe that a fine exceeding this amount can be levied against individuals charged with offenses under our penal code, without granting them a jury trial on appeal." *Id.* at 713, 465 A.2d at 886.

█ The language of RSA 599:1 (Supp. 1990) is clear. The words "by the imposition of a civil penalty bringing the total fines and penalties for a violation to an amount in excess of $500, may . . . appeal therefrom to the superior court," encompass the penalty assessment. Calling the excess an "assessment" does not alter or diminish its consequence to the defendant. Credulity is strained to say that it does. The legislature and the framers of the New Hampshire Constitution have determined a threshold at which the benefit of a jury trial becomes a right. In this case, we hold that the threshold has been reached. Justice Cardozo long ago warned of the pitfalls involved in what he described as the "tyranny of labels." *Snyder v. Massachusetts*, 291 U.S. 97, 114 (1934). To say that an assessment on a penalty is not in and of itself a penalty is to say that a surtax is not a tax and that an extended term of imprisonment is not imprisonment.

█ We affirm the trial court's denial of the State's motion to vacate the appeal.

*Affirmed and remanded.*

All concurred.