Cheshire
No. 93-483

THE STATE OF NEW HAMPSHIRE

v.

PHILIP J. GOODNOW

July 24, 1995

*Jeffrey R. Howard*, attorney general (*Mark S. Zuckerman*, assistant attorney general, on the brief and orally), for the State.

*Albert E. Scherr*, acting chief appellate defender, and *Richard C. Guerriero, Jr.*, assistant appellate defender, of Concord (*Mr. Scherr* and *Mr. Guerriero* on the brief, and *Mr. Guerriero* orally), for the defendant.

BATCHELDER, J. This is an interlocutory transfer by the Superior Court (*Mangones*, J.). The defendant, Philip J. Goodnow, moved to dismiss two charges of assault by a prisoner, RSA 642:9 (1986), on double jeopardy grounds after having served a sentence for direct criminal contempt stemming from the same conduct. The trial court denied his motion to dismiss, and the defendant moved to reconsider. The trial court treated the motion as a request for an interlocutory transfer and granted the request. On appeal, the defendant frames the question as follows:

> When a defendant has been convicted of direct criminal contempt for physically attacking police officers in open court, is a subsequent prosecution for assault on the basis of the same conduct prohibited by either Part 1, article 16 of the New Hampshire State Constitution, or the Double Jeopardy clause of the Fifth Amendment of the United States Constitution, as applied to the states through the Fourteenth Amendment?

We answer this question in the affirmative and remand.

On February 24, 1992, the defendant appeared in Keene District Court (*Lane*, J.) for arraignment and setting of bail in an unrelated matter. When the prosecutor's request for $5,000 bail was granted, the defendant, then in official custody, became disorderly and used profanity toward the judge while being led away. Then, according to the district court's order, the defendant

> appeared to turn in my direction and Court Security consisting of the Court Bailiff (Frank Smith), Swanzey Chief (Olgren), and 2 N.H. State Police Officers (Sweet & Jones) then attempted to restrain the defendant and a fight ensued between the defendant and officers with Trooper Jones being injured.

The court then summarily found the defendant in criminal contempt and on the following day sentenced him to sixty days at the house of correction. Subsequently, the defendant was indicted on two charges of assault on Trooper Jones, one indictment alleging knowing

conduct and the other charging recklessly causing injury. The parties and the trial court agree that the felony charges arise out of the same incident as the criminal contempt.

The defendant argues that under both the State and Federal Constitutions his prosecution for assault is barred by the guarantees against double jeopardy. He contends that under the New Hampshire "difference in evidence" test, *see State v. Constant*, 135 N.H. 254, 605 A.2d 206 (1992), the contempt and assault constitute the same crime. Under the federal test, *see Blockburger v. United States*, 284 U.S. 299 (1932), the defendant argues he is entitled to dismissal of the indictments because the assault is a lesser-included offense of the direct criminal contempt. The State counters that the prosecution is not barred by double jeopardy. As a threshold matter the State argues that double jeopardy does not apply to a summary finding of direct criminal contempt. We first address the defendant's claim under the State Constitution, using federal decisions only to the extent that they may aid our analysis. *See State v. Gravel*, 135 N.H. 172, 176, 601 A.2d 678, 680 (1991). As we find the protection the defendant seeks under our own constitution, we make no independent federal analysis.

A court has the power to punish an individual for direct criminal contempt, that is, contempt occurring in its presence. *Town of Nottingham v. Cedar Waters, Inc.*, 118 N.H. 282, 285, 385 A.2d 851, 854 (1978). This "authority is necessary to prevent acts or conduct which would obstruct or interfere with the orderly administration of justice." *State v. Martina*, 135 N.H. 111, 116, 600 A.2d 132, 135 (1991) (quotation and ellipses omitted). When the contemptuous behavior is openly threatening and committed in the presence of the court, direct contempt may be punished summarily, "all elements of the contempt being clearly observable by the court." *Town of Nottingham*, 118 N.H. at 285, 385 A.2d at 854.

██ Although not found in the Criminal Code, criminal contempt is an offense, *Martina*, 135 N.H. at 116, 600 A.2d at 135, and "[t]he sentence is punitive . . .," *Town of Nottingham*, 118 N.H. at 285, 385 A.2d at 854. Having been found in criminal contempt and sentenced therefor to imprisonment, the defendant has been punished for a criminal offense.

The double jeopardy clause of the New Hampshire Constitution prohibits multiple prosecution and multiple punishment for the same offense. *State v. Fitzgerald*, 137 N.H. 23, 25, 622 A.2d 1245, 1246 (1993). If the offenses are the "same" as that term is defined in our double jeopardy jurisprudence, then the clause's bar to the instant prosecution applies.

The State argues that double jeopardy protection is not triggered by a direct criminal contempt conviction because a contrary result would undermine a court's authority to deal effectively with disruptive conduct in the courtroom. This argument, however, begs the essential question of whether the contempt gave rise to the defendant's punishment for a criminal offense. The cases principally relied on by the State, *United States v. Rollerson*, 449 F.2d 1000 (D.C. Cir. 1971), and *United States v. Mirra*, 220 F. Supp. 361 (S.D.N.Y. 1963), while factually similar to the case at bar, do not, as the State concedes, discuss the issue of multiple punishments; they hold double jeopardy principles inapplicable because, as the summary contempt proceeding was not a prosecution, the defendant was not subjected to a second prosecution for the same offense. *See Rollerson*, 449 F.2d at 1004-05; *Mirra*, 220 F. Supp. at 366.

The State maintains that because summary contempt is not an adversarial proceeding brought against a defendant by a prosecutor, double jeopardy is inapplicable. This suggests that the agency by which and the purpose for which a defendant is sanctioned for his criminal conduct sufficiently differentiates contempt from a statutory crime to exempt it from the double jeopardy protection cloaking other offenses. To a defendant sentenced to incarceration for direct criminal contempt, however, it is a matter of indifference that the punishment is intended to vindicate the court's authority to keep order in the courtroom rather than the State's authority to enforce its criminal laws. "[C]onvictions for criminal contempt are indistinguishable from ordinary criminal convictions, for their impact on the individual defendant is the same." *Bloom v. Illinois*, 391 U.S. 194, 201 (1968); *see also United States v. Dixon*, 113 S. Ct. 2849, 2858 (1993) (text of double jeopardy clause "looks to whether the *offenses* are the same, not the interests that the offenses violate"); *cf. State v. Corson*, 134 N.H. 430, 433, 593 A.2d 248, 250 (1991) (calling excess penalty an assessment "does not alter or diminish its consequence to the defendant").

We are naturally sympathetic to the needs of judges to maintain order and dignity in their courtrooms. Some may argue that our decision may inhibit judges' exercise of their authority to punish criminal contempt. As the Supreme Court has noted, however, nothing supports a "'pragmatic' view that the meaning of the Double Jeopardy Clause depends upon our approval of its consequences." *Dixon*, 113 S. Ct. at 2858 n.4 (citation omitted). Because the defendant was punished for the assaultive conduct that comprises the subsequent indictments, a prosecution for the same offense would run afoul of the double jeopardy prohibition.

■ The State concedes that if double jeopardy applies, the assault and the contempt constitute the same offense under current New Hampshire double jeopardy principles. As a result, the assault prosecution is barred. The State urges us to abandon our double jeopardy test in favor of the federal same-elements test of *Blockburger v. United States*, 284 U.S. 299. Our reasons for adopting the so-called same evidence test were sound, *see generally Heald v. Perrin*, 123 N.H. 468, 464 A.2d 275 (1983), and we have applied it consistently and recently, *see, e.g., State v. Brooks*, 137 N.H. 541, 629 A.2d 1347 (1993). We see no reason to depart from it. *See generally Brannigan v. Usitalo*, 134 N.H. 50, 53, 587 A.2d 1232, 1233 (1991).

*Remanded.*

THAYER, J., with whom BROCK, C.J., joined, dissented; the others concurred.

THAYER, J., dissenting: I disagree with the majority's holding that a summary contempt proceeding is a prosecution within the meaning of the double jeopardy clause of the State Constitution. The interlocutory question before the court is whether a finding of summary contempt bars "a subsequent prosecution for assault on the basis of the same conduct." As I do not believe that double jeopardy applies to a summary contempt finding, I would answer in the negative.

Both the State and Federal Constitutions prohibit multiple prosecutions and multiple punishments for the same offense. *State v. Fitzgerald*, 137 N.H. 23, 25, 622 A.2d 1245, 1246 (1993). "These protections are triggered by criminal proceedings," or punitive civil proceedings. *Id.* at 25-26, 622 A.2d at 1246. A summary finding of criminal contempt constitutes neither a criminal proceeding nor a punitive civil proceeding; therefore, it does not trigger double jeopardy protections. *See United States v. Rollerson*, 449 F.2d 1000, 1004-05 (D.C. Cir. 1971); *United States v. Mirra*, 220 F. Supp. 361, 366 (S.D.N.Y. 1963); *see also United States v. Dixon*, 113 S. Ct. 2849, 2865 (1993) (Rehnquist, J., concurring in part and dissenting in part) ("as a general matter, double jeopardy does not bar a subsequent prosecution based on conduct for which a defendant has been held in criminal contempt").

The trial court found that the defendant was in direct contempt of court.

A direct criminal contempt may be punished summarily if the Justice certifies that he saw or heard the conduct constituting the contempt and that it was committed in the

actual presence of the Court. Oral notice of the conduct observed must be given by the Justice and the contemnor given an opportunity to speak in his defense.

SUPER. CT. R. 95(a). "Summary procedure dispenses with the issuance of process, service of complaint and answer, holding of hearings, taking of evidence, listening to arguments, filing of legal memoranda, submission of findings and all that goes with a conventional court trial." *Town of Nottingham v. Cedar Waters, Inc.*, 118 N.H. 282, 285, 385 A.2d 851, 854 (1978). Additionally, constitutional protections afforded to a criminal defendant, including "formal charges [and the] right to counsel" are dispensed with in summary contempt proceedings. *Id.* at 286, 385 A.2d at 855.

Summary contempt proceedings are not criminal prosecutions within the meaning of the double jeopardy clauses of the State and Federal Constitutions. Non-summary "criminal contempt is . . . treated the same as a crime," and therefore requires constitutional protections. *Id.* at 286, 385 A.2d at 854. Summary contempt proceedings, however, do not require such safeguards. *Id.* at 286, 385 A.2d at 855.

The majority errs by basing its punishment evaluation on the defendant's perspective. The United States Supreme Court has previously stated:

> This is not to say that whether a sanction constitutes punishment must be determined from the defendant's perspective. On the contrary, our cases have acknowledged that for the defendant even remedial sanctions carry the sting of punishment. Rather, we hold merely that in determining whether a particular civil sanction constitutes criminal punishment, it is the purposes actually served by the sanction in question, not the underlying nature of the proceeding giving rise to the sanction, that must be evaluated.

*United States v. Halper*, 490 U.S. 435, 447 n.7 (1989) (citation omitted). "Although characterized as a crime, criminal contempt should properly be viewed as a non-statutory offense." *State v. Martina*, 135 N.H. 111, 116, 600 A.2d 132, 135 (1991). Contempt proceedings "protect the authority and vindicate the dignity of the court." *Town of Nottingham*, 118 N.H. at 285, 385 A.2d at 854. The purpose of summary contempt is to allow the trial court "to prevent acts or conduct which would obstruct or interfere with the orderly administration of justice." *Martina*, 135 N.H. at 116, 600 A.2d at 135 (quotation and ellipses omitted). This purpose distinguishes sum-

mary contempt findings from standard statutory crimes and from non-summary contempt proceedings, and as a result, double jeopardy is inapplicable to such findings. Because I do not believe that double jeopardy applies to a summary contempt, I respectfully dissent.

BROCK, C.J., joins in the dissent.